Defendant at the meeting, Mr. John G. Backus, on behalf of the Defendant at the meeting, Mr. Barrett. Good morning. Good morning, Your Honors. May it please the Court. Your Honors, as an initial matter, I'd like to direct our attention to the nature of the case, the section in the Defendant's brief. The Defendant does ably state that the statement in its brief contends that no issue is raised challenging the pleadings nor the order granting rescission. Could you adjust the microphone since you're very tall? Yes. Okay. Were you able to hear me? Just to address the microphone, move the microphone up so it catches your voice. Could you hear me? Yes. Okay. All right. That is a true statement. In my nature of the case, the section, that last sentence, no issue is raised challenging the pleadings nor the order granting rescission. Your Honors, this language in this section is boilerplate. I did not remove that sentence in crafting that section, and that was an oversight on my part. I just wanted to make you aware of that. Obviously, we are here today because we're challenging the pleadings, in this case, a sworn report prepared by Officer Sean Conlon. Your position is that the original sworn report was sufficient to provide notice. Is that your position? Our position, the State's position, is that the initial report was sufficient on its face. There was enough information contained on the face of that report to communicate everything that was contained and required under the statute for summary suspension, yes. So it's your contention that the Secretary of State should have taken, should have looked at that form and not sent it back? In other words, sent the notice of the effective date, so they should have done the calculations themselves and sent the effective date of the suspension to the defendant? You know, I think an abundance of caution was used by the agency to correct the notified defect. But, you know, the case law interpreting these precision cases, you know, some of the Scrivner's-era issues we run into, what they state is that although the Secretary of State did send the report back, it could have, as in McClure, this court's decision in McClure, that report did not contain the notice of summary suspension date. Right, so that was different from this, wasn't it? So you think they should go, it's their job to go a step further. It doesn't matter, in other words, that the case is distinguishable from this situation. Well, I think it's only distinguishable in the fact that there was no date there. It's very much like this case in that each date that is on the report, the lower right-hand corner of the report is dated January 12th. The arrest date is January 12th, 2019. The officer marked the box that he immediately served and issued notice to the defendant. That is all very much on point with McClure. And not only that, the notice of summary suspension line did contain January 12th. The 1996 carries down the birth year of the defendant. Directly above that line you see the birth year. Now, we don't believe that six months before the defendant was born, he was issued this report. The defendant wasn't born until July of 1996. So this is an obvious Scrivener's error. Well, the defendant argues that it cannot be a Scrivener's error because the Secretary of State noticed it and sent it back to the officer. Correct. So how do you respond to that argument that it can't, as a matter of law, be a Scrivener's error because the Secretary of State did not act on it? Well, I read the defendant's understanding of the law to be incorrect. In McClure, the Secretary of State did send a report back to the issuing agency. The issuing agency corrected the report, and then it was noticed back to the original date of notice. Here, the amended report, when it was amended, wasn't ascribed to the initial date of January 12th. It took it out 10 days. So, in essence, when the officer completed the report on January 22nd, he put January 22nd as the notice date when, in fact, the original notice date of January 12th, 2019, was in force through that report. We know that the first report wasn't annulling. It wasn't erased by this amendment. The whole reason we were in court, he was apprised of the suspension proceedings, the nature of the proceedings, he received the report. Not even a week later, they were in court arguing it. Everything the statute set out to do, it operated to do in this case. So to consider that first report as somehow having no legal effect at all would be incorrect. And your argument that would be inconsistent with the purpose of the Act? It would be inconsistent with the purpose of the Act. We have a compelling interest in protecting our roads from drunk drivers. We know the defendant was above the legal limit. He was driving above the limit. He blew a .108. So this isn't an issue of someone that's being deprived unfairly. He had this coming. Well, should we look at the merits of the underlying case in deciding whether or not the defendant had sufficient notice? That's irrelevant, isn't it, how drunk he was? Well, I think... Is that relevant? Part and parcel with what we're looking at here is that public interest. They built that public interest into these cases. That is kind of the foundation of why we're here. But we look at... We don't look at the underlying merits, do we, when we determine whether or not he has sufficient notice? That was actually part of what was being challenged below. It was a jurisdictional question. There were other issues being addressed below. Ultimately, it was decided on the Scribner's error. But I think a lot of times in these cases, we are examining whether the officer had probable cause to arrest. Probable cause to arrest was raised below. So the facts and the nature of being above the legal limit does play into the decision. Did you find any law that states that when a Secretary of State returns a sworn report, it is defective as a matter of law? Is there any cases that say that? There are cases that say that. And I believe this case is distinguishable from most cases. In People v. Pollitt, that case, which was what the trial court in this case used to decide... That was our case, correct? Yes, yes. In that case, the initial notice date, the defendant was actually deprived of the initial notice date. The date he received notice was backdated the day prior. And then the Secretary of State affected the statutory summary suspension based on that defective deprivation. So in effect, there was literally a 45-day rather than a 46-day. He was deprived of that additional day to prepare. In this case, the initial notice date was not deprived. He received it on that day in person immediately. It was listed as January 12th. And then the amendment actually pushed it further. Rather than depriving him of a single day, it pushed it out 10 days into the future. But if the sworn report was defective, then the 122 report actually falls right into Pollitt, doesn't it? Well, if it was the initial notice. But the amended report wasn't the initial notice. Pollitt concerned the initial notice. There was never an amendment process in Pollitt That distinguishes it from this case. And then this court, I was examining another opinion of this court. In People v. Lent, this court said, that to require rescission of the suspension for every oversight in completing the required paperwork would unfairly tip the balance in favor of the driver's rights at the expense of public safety. I think that fits right on point with this case, what we're looking at here. We have to use common sense. We have an issue of human error. We carry down the birth year. Do we give the defendant his driver's license or his driver's keys back and say, okay, you can go ahead and drive? I apologize, I have a blood glucose monitoring system that's alerting me to a high blood sugar. I apologize. So I don't believe in a situation like this where he hasn't been deprived of the day, and we see that giving him his license and his car keys back here would legitimately potentially be a risk to the public. I don't think that we can, I think we've got to apply some common sense at the end of the day in this case. Anything else? If your honors don't have any other questions for me, I think that'll do. All right, thank you, Mr. Baird. You'll have time for a follow-up. Thanks. Thank you. Yes, ma'am. Well, I'm definitely going to have to bring the microphone down. Good morning, Justices. May it please the Court. Good morning. My name is Melissa May, and I represent the defendant, Ross Routh, in this matter. Interesting, it was very interesting to me when I started working on this particular project of the distinctions between the defendant's arguments and the state's arguments. If you weren't paying close attention, it would be difficult to see that the state's arguments and the defendant's arguments were actually about even the same case, because the focus of the state's argument is so much on the sufficiency of the initial report, the initial sworn report that was given, whereas what the defendant relied upon as well as the trial court relied upon was the fact that the amended report was the one that was deficient under Pollitt  So to me, what was really interesting and striking about this is that distinction in itself, and I was thinking about what is it about these two cases and these fact patterns that make this one so unique. And one of the things that I got to focusing on was, when I was trying to figure out how to argue this, was the fact that the purpose of the sworn report is it serves as the initial complaint. Basically, it's a civil proceeding, and it serves the same function as the complaint does, so that the initial report serves more than one purpose. For the state's argument, the only purpose that the sworn report serves is to provide notice to the defendant that 46 days from the date of his arrest, he's going to be summarily suspended, and this is the procedure he's entitled to adhering. That's the only purpose that the notice serves. Then the state's argument has a little bit more weight, but the fact is that's not the only purpose that the notice serves. The sworn report also confers the trial court with jurisdiction over the summary suspension, and it also gives the information to the Secretary of State so the Secretary of State can adequately calculate the 46 days. So there's more going on here than just the notice. The purpose that the state cites, though, relates to the due process arguments that are contained within all these cases. Correct. And that is one of notice. Correct. So why doesn't that take precedence? Because really that's what we're talking about is notice, giving someone the full 46 days to prepare. Well, the notice aspect of it, of course, is what is extremely important to the defendant in this matter, as it would be for any defendant. So the due process concern is, of course, why we're here. But the fact is there's more going on than just the ‑‑ Go ahead. Okay. So this is a civil proceeding, and so what's happened here is essentially the complaint, the civil complaint has been amended. When the Secretary of State sent the notice back, the sworn report back, saying that it was in error, that was when Conlon got notice that the notice was defective and the report was defective and in error, and so he corrected it, and he corrected it in two significant ways. First, he corrected it by saying that the date that the defendant received the notice was amended. So no longer did the date that the defendant received the notice stay the same as his arrest date. Now the date that he received the notice was the date that the notice was mailed. He also stated that the way the notice was served also changed, because he said that in his sworn report that now the notice, that second amended notice, was mailed. And that's how we got to Pollack in this case, because it's interesting that the State argues that the defendant actually got 10 extra days of notice, and he's still miscalculating the dates, because had the notice gone out on the proper date, which was the 23rd of January instead of the 22nd of January, the defendant actually would have supposedly had 11 days of notice or extra days of driving rather than simply 10. You say in your brief that the statutory window was shortened by one day, implicating due process, but due process does not require perfect notice. It requires sufficient notice, correct? Correct. And so your argument is that we should just ignore the fact that the original sworn report and notice was provided to the defendant on the date of his arrest, which is checked off on the form. We ignore that and set it aside as if it never existed, and we look only at the amended report. Is that your position? Is that your position? I'm trying to process this and say I would say no, and this would be why. If you file an amended complaint, and the amended complaint is dismissed pursuant to 216 for failure to state a cause of action, if you do that, that doesn't revive the underlying complaint that was amended. What happens if the amended complaint is dismissed, then the entire cause of action is dismissed. Here the amended sworn report serves the same function as an amended complaint. And so because of that change, the notice that was taking place on supposedly on January 12th, which we have no way of knowing if that was accurate or not, because the date that was stated that the defendant received the notice and the date that he was arrested, we've got four dates on this form, and two of them are incorrect. He testified that he gave notice on the date, on January 12th. He did testify, correct, yes. So he testified consistent with the first notice. Yes. And also part of the record is the warning to motorists, which your client signed on January 12th at 316 a.m. Correct. He did receive the warning, which is different than this one report. I understand that. But, I mean, if you put it all together, the Secretary of State looking at this, at some point in time does common sense creep into this at all, where perhaps maybe your client didn't refuse a test seven months before he was born? Well, I think we can make that assumption that he didn't refuse the test seven months before he was born. But the standard that the State is advocating here is that the Secretary of State should have been able to figure it out. And when you look at the form that is to be completed, it's not an onerous burden on the police officer. In fact, one of the cases that I read stated that the information that is on this report is uniquely in the purview of the police officer. It's not an onerous burden on the police officer to require him to get the dates correct. And ten seconds of proofreading of his own report would have solved this whole problem. Right. But we're also talking about scriminger's error versus the public policy of keeping drunk drivers off the road, correct? Correct. Correct. That's a balance that's going to occur in every one of these cases. However, the question is, is this a scrivener's error? Again, there are four dates that have to be completed on this. And any one of those dates can change because, as much as you hate to say it, drunk driving occurs a lot of times after midnight. As my dad used to say, nothing good ever happens after midnight. And what ends up happening in some of these cases is you might be arrested at 11.15 or 11.30. You might refuse the test at 12.15 or 12.30. And I don't think we want to take the position that that doesn't matter. But that's not the case here. Each case, each of these cases, there's a little bit of a difference. Correct. It's a pileup, but then there's a clear end here. At what point in time does common sense have a role to play? I mean, we know it could not. It's impossible that it could have been 1996. Well, even though we know that it's impossible. It's impossible. And the issue is could the Secretary of State have confirmed it by noticing, well, that was a mistake? Well, I guess the question is how much of a burden do we want to put on the Secretary of State to interpret what the police officer meant? Well, we interpret it, not the Secretary of State. They perform an administrative function. Whether or not the due process, the interest of the due process, has been protected is up to the court, correct? Correct. But under the statute, it is the Secretary of State's responsibility to make a determination whether that form is defective or not. Well, they perform an administrative function to provide notice, not to determine whether or not the interest of due process has been protected, correct? Correct. But they also are the ones that are charged with the responsibility for handling the summary suspension. And because of that, it's the Secretary of State that suspends the driver's license, not the police officer. When you look at the forms, and this is not addressed in the briefs, but the first form, the officer checks off the box that he provided in-person notice, correct? Correct. In the second form, he checks off that notice is provided by mail, correct? Correct. He didn't check off again that he performed personal service on January 22nd. Now he is providing notice through the Secretary of State, correct? Correct. And what's interesting about that is actually I would say that the officer did what he was supposed to do under those circumstances. Because what he did was he changed the way the defendant received notice because he did put the notice in the mail. And assuming that the original sworn report was defective, then what the police officer was doing was actually reinvigorating his sworn report by making it factually accurate at this point in time. By saying that not only did he date the report, the date of the arrest correctly, he dated, but he changed the date of the notice because the original notice said he received it immediately. He changed it to say that he received it by mail. So once he changed it to say it was amended to say it was received by mail, that's when the mail rule kicks in and what the calculation date becomes is the date that the notice was mailed. And that's what the Secretary of State relied on. And, unfortunately, under Pollitt, that was actually inaccurate as well. Because under the verification under 1109 of the Code of Civil Procedure, he should have said that it was going to go into the mail the next day, and he didn't. And that verification was inaccurate. How do you respond to the State's argument that Pollitt is different, that in Pollitt it was the initial report? I don't think that makes a difference. And simply because most of the cases that deal with the amendment, the testimony happens at the trial or at the hearing where the police officer will testify that he backdates the notice to the date that the defendant was arrested. Here we've got two notices, and not only did the police officer testify that the defendant received the initial notice in a one-line sentence in his testimony, he also went into great detail about what he did to amend this report, why he sent it out by mail, what the mailing process was at the sheriff's office. And it was those facts that the court relied on when it decided to rescind the summary suspension. The court specifically stated that that was the basis for the rescension, not what happened with the initial notice. Does any error make the first notice a nullity? Or does the fact that the Secretary of State sends a notice back to the law enforcement officer, chooses to do that, make the first report a nullity? I mean, what would make the first report a nullity so that we would have to look to the second report? I would say that the fact that the Secretary of State sent the notice back pointing out that it was defective and that the Secretary of State did not enter the summary suspension. So the court has to have a summary suspension before it, before you can rescind it. How would we get by McAleer and the language in McAleer where we said, the issue is not whether the Secretary actually confirmed the summary suspension based on the information in the sworn report, but rather whether the Secretary could have done so. How would we get past that? Well, I think at some point in time you have to make the decision about whether the Secretary of State could have, how many mistakes have to be made before it reaches the level where the Secretary of State could not have made the determination of what the date was. You also have to look at cases like Palacios, which says that the Secretary of State should not just presume or guess what the date was. There needs to be factual information in front of it in order to make that determination. And when the police officer is putting information before the Secretary of State that is not no date, or we can assume it was a date, but actually putting out a wrong date, an incorrect date, that's what makes the difference between this case and McAleer. The box in the original sworn report, and the sworn report lays out the probable cause for the arrest, correct? Yes. And just as the second report does. The box is checked in the original sworn report that Deputy Conlin served immediate notice of the summary suspension slash revocation driving privileges on the above named person and the arrest date of January 12th of 2019 is correct, correct? Correct. So why couldn't the Secretary of State have noticed this 96 has to be wrong and just said, well, you know, it's checked off? Well, the Secretary of State could have done that, or the Secretary of State could have looked at this and looked at the statute of 501.1, which says that there's two reasons to return it as defective. One is the date is incorrect, and two, it was the form was completed incorrectly. You've answered my question. I think you're correct that the Secretary of State could have. They chose not to, right? Correct. Could the State here at the hearing move to amend the January 22 sworn report to conform to the proofs that the officer gave notice of the sworn report on January 12th? I think that there would be a problem with trying to conform to the proofs simply because the testimony of the officer goes back and forth. He talks about that he acknowledged that the dates were incorrect. He talks about the fact that it didn't conform to the proofs because his testimony also goes to the sworn report of the second amended report. Well, he testified to both. He testified on the 12th. I served him with the sworn report that's in the record. And then later, when the question about the later filing, the later sworn reports went through the process of how I put that in the mail. Well, and the State didn't ask to conform to the proofs in this case. No, I know. I know. And had they done so, it might have been a different outcome, but had they done so after the – can I finish my thought? Sure. Had the State moved to conform to the proofs after the close of the testimony, I think they would have run afoul of some of the case law out there that says that the time to amend this is either before the hearing or at the hearing, not following the ruling. So I think that's where we would have come to a problem with the facts of this case. Thank you for your time, Justice Ginsburg. Thank you. Thank you. Mr. Berger, you're welcome. Counsel, how do you respond to the opposing counsel's complaint analogy that this is akin to a complaint, and by filing a new complaint that makes allegations of a different service of notice, that you're bound to that? Well, I think it's distinguishable because we have specific provisions set out in the suspension statute, one of those dealing with the amendment process. It allows the amendment after the Secretary of State sends it to the issuing agency with the defect identified. Now, there isn't any specific procedure there. Basically, it's just assuming that the agency and the court will decide whether that was a fatal defect or whether that was something that could be dated in accordance with the original initial notice date. I think the amendment provision isn't specific enough to actually say, hey, we violate it based on this second report. We have this detail in that amendment provision, H. It just generally sets out that where there's a defect, it sends it back to the trial court, and it sends a copy to the issuing agency to correct. It doesn't set anything further than that. So there's just an assumption that people will take some reasonable measures to remedy that based on the nature of the defect. It's sort of case specific. In this situation, the mailing provision, there's a lot of talk about the significance of that. Provision F states that the initial mailing based on a subsequent blood analysis, that provision is specific to a subsequent blood analysis where they're initially mailing it weeks after the fact. This isn't applicable to this case because we have a breath test the same day on that initial notice date. We know that the defendant was served notice on that date. So this F provision is mailing provision. The fact that the trial court tried to apply that in this case, clearly it doesn't apply. It's only applicable in subsequent blood analysis where they're mailing an initial report to the defendant. The other thing I'd add, the defendant talked about Palacios. This case is not like Palacios because in Palacios, the issuing officer did not mark the box that says immediate notice was served on the defendant. So that was defective. And then there was no notice date at all. That was left blank. So there are numerous holes in that sworn report. Here, there's no holes in the sworn report at all. Every blank is filled out January 12th, January 12th, January 12th. Correct years on all those except right under the defendant's birth year, 1996, carried down. This case quite simply just needs to be decided in favor of the state. We need to reverse the trial court's judgment and remand with directives to reinstate the summer suspension of the defendant's driving privileges. Thank you, Mr. Burr. The court thanks both parties for their arguments today. The case will be taken under advisement. A written decision will be issued in due course to the court's stance and reasons. Thank you.